IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SABRINA LORRAINE WHITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     1:21cv368 |
| | ) |
| GUILFORD TECHNICAL | ) |
| COMMUNITY COLLEGE, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION, RECOMMENDATION, AND ORDER
### OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge on the Application to Proceed in District Court Without Prepaying Fees or Costs (the "Application") (Docket Entry 1) filed by Sabrina Lorraine White (the "Plaintiff") in conjunction with her pro se Complaint (Docket Entry 2) against Guilford Technical Community College ("GTCC" or "Guilford Tech."). The undersigned will grant the Application for the limited purpose of recommending dismissal of this action due to frivolousness.

### RELEVANT STANDARDS

"The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts solely because his poverty makes it impossible for him to pay or secure the costs." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (internal quotation marks omitted).

"Dispensing with filing fees, however, [i]s not without its problems. . . . In particular, litigants suing in forma pauperis d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." Nagy v. FMC Butner, 376 F.3d 252, 255 (4th Cir. 2004). To address this concern, the in forma pauperis statute provides that "the court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous." 28 U.S.C. § 1915(e)(2)(B)(i).

As the United States Supreme Court has observed, "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "The word 'frivolous' is inherently elastic and not susceptible to categorical definition. . . . The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the frivolity of a claim." Nagy, 376 F.3d at 256–57 (some internal quotation marks omitted). The Supreme Court has further explained that factually frivolous complaints involve "allegations that are fanciful, fantastic, and delusional. As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts

2

available to contradict them." Denton v. Hernandez, 504 U.S. 25, 32-33 (1992) (citations and internal quotation marks omitted).[1] In determining frivolousness, the Court may "apply common sense." Nasim, 64 F.3d at 954.

Moreover, although federal courts must "liberally construe[]" pro se filings, Estelle v. Gamble, 429 U.S. 97, 106 (1976), "[t]he liberal construction which [courts] are obliged to afford to a pro se complaint is not without bounds," Stratton v. Mecklenburg Cnty. Dep't of Soc. Servs., 521 F. App'x 278, 290 (4th Cir. 2013). "Admittedly, pro se complaints represent the work of an untutored hand requiring special judicial solicitude. Nevertheless, they may present obscure or extravagant claims defying the most concerted efforts to unravel them. . . . [J]udges are not mind readers, and the principle of liberal construction does not require them to conjure up questions never presented to them . . . ." Id. at 290-91 (citation and internal quotation marks omitted).

---

[1] Notably, complaints presenting "[c]laims that are essentially fictitious," such as ones asserting "'bizarre conspiracy theories,'" also merit dismissal under the substantiality doctrine. Newby v. Obama, 681 F. Supp. 2d 53, 56 (D.D.C. 2010) (quoting Best v. Kelly, 39 F.3d 328, 330 (D.C. Cir. 1994)); see also O'Brien v. United States Dep't of Just., 927 F. Supp. 382, 385 (D. Ariz. 1995) ("On their face, [the p]laintiff's allegations are so bizarre and delusional that they are wholly insubstantial and cannot invoke this Court's jurisdiction.").

**DISCUSSION**

Plaintiff purports to bring her claims against Guilford Tech. under "29 U.S. Code 158a1" (Docket Entry 2 at 3),[2] a statutory provision that prohibits interference with collective bargaining rights, see 29 U.S.C. § 158(a)(1); see also 29 U.S.C. § 157. However, Plaintiff's Complaint lacks any allegations regarding collective bargaining. (See Docket Entry 2 at 1-28.) Moreover, according to Plaintiff, "this [case] is not about an Employee/Employer Relationship, but about Guilford Tech.[] willingly and willfully placing [certain] people around [her] . . ., and they ran [her] from [her] apartment[ and] hotel and eventually caus[ed] a potential 'Black Lives Matter' situation for [her]." (Id. at 22.) As such, Plaintiff's Complaint represents a continuation of claims that she brought in 2019, which this Court dismissed on frivolousness grounds, a ruling that the United States Court of Appeals for the Fourth Circuit affirmed. See White v. Guilford Tech. Cmty. Coll., No. 1:19cv135, 2019 WL 11660603, at *4 (M.D.N.C. May 2, 2019), report and recommendation adopted, No. 1:19cv135, 2019 WL 11660604 (M.D.N.C. May 20, 2019), aff'd, 780 F. App'x 83 (4th Cir. 2019).

More specifically, the Complaint asserts, inter alia:

> Since I filed harassment at Guilford Tech[.] (please see file from Guilford Tech[.] and previous lawsuit in

---

[2] Docket Entry page citations utilize the CM/ECF footer's pagination.

U.S. District Court #19cv00135, which I sent to U.S. Court of Appeals[])], and was forced out of my apartment because when I filed harassment at Guilford Tech., immediately after the guy turned and married a Fonda Nelson from my home church in High Point, NC, Gethsemane Baptist Church, and the Church had originally thought I did wrong in the 1990's and now another girl is to blame for that, but when he married her, he brought the church and the black community against me; I called Guilford Tech.[] to let them know what was going on, and immediately Day'Quan L. Davis appeared around me (please see his student ID from Guilford Tech.[] and pictures of him stalking and cyberstalking at my car); Day'Quan was in the Weaver's House around me (and I was staying there because my family goes to Gethsemane Baptist Church where Samuel Terry (the guy I filed harassment against) stalked and cyberstalked and married Fonda Nelson from Gethsemane Baptist Church herself, and my family goes to that church, so I have been forced to be homeless (and I want to be paid for this)[)], and I subpo[en]aed employment information on Samuel Terry, and Guilford Tech.[] sent the subpoenaed information to me at the Weaver's House, and then Day'Quan L. Davis appeared, and when I moved to 3700—L Flint Street, he moved to 3700-M Flint St., staying right up under me, and I heard someone say Day'Quan goes to Guilford Tech., so I asked Day'Quan for a copy of his student ID (please see student ID from Guilford Tech.[]) and got a copy of his student ID and pictures of him and a Christal M<sup>c</sup>Laughlin looking boy from Human Resources at Guilford Tech.[] stalking and cyberstalking at my car (please see pictures of them at my car), and I have complained to the police that I am being stalked, cyberstalked and watched, and I got scared and fled my apartment, and made it to Concord and in my hotel in the Hilton, I had to call the police, and the next day please see pictures of a Beverly Nipper looking woman from Human Resources[3] in the Hilton (she was in Room 204, and I was in Room 206, and I had to go get a picture of her because they were trying to get into the adjo[i]ning door in my room, and when I returned I noticed my television said Room 208 (please see pictures

---

3 The Complaint's exhibits contain a 2017 letter to Plaintiff from Beverly Nipper, GTCC Human Resources Department Employee Relations Manager, specifying, apparently in response to a subpoena from Plaintiff, the dates of "Samual" Terry's GTCC employment, which ended in 2012. (Docket Entry 2-1 at 182.)

5

of television with Robin Robinson on the television, and again I was in room 206, but now my television said Room 208, and again I am complaining to the police of being stalked, cyberstalked and at this point definitely watched, and I called the police, (but not all police departments give 911 records in the form my 911 records are turned in to U.S. District Court — please see my 911 reports), and I had to leave the Hilton with nowhere to go, and the police said go back to Guilford Tech.[] and get my job back, but they had banned me (please see document of ban from their attorney Patrick Kane[4]), so again I am homeless because of them, so I went back to High Point where my family was, (but I couldn't stay with them because they go to Gethsemane where Samuel Terry stalked and cyberstalked and married Fonda Nelson after I filed harassment against him), and so now that I am back in High Point after all my homeless stays because of them now, I have taken pictures of Guilford Tech.'s[] cars (police) cars all around me (please see pictures of Guilford Tech.'s[] police cars), and then the High Point Police Department came behind me and ran my license plate, and my Driver's [L]icenses were cancelled — suspended, and the police came to my car, and told me (I was staying in the Sheetz's parking lot on Hwy 68 in High Point . . .[)], and it could have been another [B]lack [L]ives [M]atter situation, and the white police officer left, and said he was not going to give me a ticket, and now I know it is Guilford Tech.[] doing all of this stuff to me, and it scares me how far they would not [sic] go, and they almost got me killed by the High Point Police Department, and they put Day'Quan L. Davis around me after they sent me the subpoenaed information to the Weaver's House where I was staying at that time (please see subpoenaed document again and the address Beverly Nipper sent it to[]), and Day'Quan stalked and cyberstalked me, and I got pictures of him at my car (please see again the pictures of Day'Quan L. Davis at my

---

4 The Complaint's exhibits contain an August 2020 cease and desist letter addressed to Plaintiff from Kane, on behalf of GTCC (see Docket Entry 2-1 at 186-87), stating that, "[o]ver the last month[, Plaintiff] ha[s] been sending repeated communications by way of email and phone calls to GTCC employees and staff, and ha[s] made numerous trips to the GTCC campus without any legitimate purpose," including to demand that "GTCC pay a bill that [Plaintiff] apparently incurred for a stay at Grandover Hotel," which "behavior must stop" (id. at 186).

6

car, and even his student ID from Guilford Tech., and he
was living right up under me, and had been there for
three (3) years for them, and I want to be paid for all
of these things because they ran me from my apartment
(please see 911 reports about this), and NOW I have even
had to call the police (see current 911 calls too) at my
current address . . ., and I have a new address because
I transferred the HUD because [of medical reasons] and I
called the police because my bankcard was being used at
the new address and I had to cancel the bankcard, and
this is proof that they are cyberstalking me and to this
day, and even see the flunked out Ph.D and the letter to
Walden I had to send,[5] and now that I have the proof I
am flunked out of a ph.d program, I requested Corporal
Johnson in Greensboro to arrest them, and even in the new
HUD apartment I had to take . . . I am Violence Against
Women (VAWA) Act because of Day'Quan stalking and
cyberstalking me at my car (please see VAWA document in
Reference to stalking) . . . .

(Docket Entry 2 at 5-13 (emphasis and formatting in original)

("Statement of Claim (#1)" headings omitted).)

The Complaint continues:

I also want to claim that on 04/23/2019, Guilford
Tech[.] willingly and willfully (since I have filed
harassment against Samuel Terry at Guilford Tech., and
since I notified them in 2017 that I was being stalked
and cyberstalked (and harassed) even further that
Guilford Tech.[] willingly and willfully entered Moses
Cone Hospital cyberstalked and switched my MRI for
another (black girl) — Tameka N. Watlington (please see
her medical discharge paperwork that I was given that
night, and please see mine — dated also 04/23/2019, and
also see . . . the discharge paperwork in my name, which
was printed and given to me on 05/15/2019 when I realized
I had received the wrong medical discharge paperwork, and
also when I knew for sure the MRI's had been switched,

---

5 The exhibits contain a November 2020 letter from Plaintiff
to Walden University, copying the High Point Police Department,
requesting that Walden University pursue criminal charges against
various individuals, including Samuel Terry, related to Plaintiff's
cyberstalking and harassment allegations. (See Docket Entry 2-1 at
174-77.)

and Ollieman at the Greensboro Police Station told me <u>all</u> cyberstalking goes on the Federal Bureau of Investigations website, so I placed it there, but to[] <u>this</u> date I cannot get the <u>correct</u> medical treatment and information . . ., and I want them to pay for it, and look at <u>all</u> the medical bills and the refusal for credit for an apartment, and now see the document of <u>all</u> the jobs they have even <u>helped</u> Samuel Terry who I filed harassment against at Guilford Tech.[] take from me.

— Guilford Tech.[] is doing <u>all</u> of this stuff to me and since I filed harassment, and I know that since 04/23/2019 when my MRI got switched and when I also ended up with the wrong discharge paperwork for the MRI, and and [sic] U.S. District Court please also see an Amendment for Health Information I had to fill out stating that I am not a schizophrenic, but that I filed harassment at Guilford Tech., and I have been labeled as a schizophrenic, which is why there is a delay in getting my Driver's [L]icenses back, and I do not want another Black Lives Matter situation since I filed harassment at Guilford Tech., and since I received the wrong medical discharge paperwork for a[n] MRI, and since notifying Guilford Tech.[] in 2017 at least that I was being harassed, and stalked, and cyberstalk[ed] further (see again the images of Day'Quan L. Davis at my car and his student ID from Guilford Tech[.]

— they have stalked and harassed and cyberstalked me further <u>until</u> they have even pushed me from my apartment and almost got me killed by the High Point Police Department and I want them to <u>pay</u>!!!

(<u>Id.</u> at 13-18 (emphasis in original) (columns and headings omitted).) Specifically, Plaintiff wants GTCC to pay nearly $1 billion in damages (<u>see</u> <u>id.</u> at 27), including $100 million for obliging her to "handwrit[e] this [Complaint]" (<u>id.</u> at 21).

Along with various employment records from GTCC (<u>see, e.g.</u>, Docket Entry 2-1 at 3-82), Plaintiff provided as exhibits to her Complaint, <u>inter alia</u>, nearly 90 pages of call records from the High Point Police Department and Guilford Metro 911 (<u>see</u> <u>id.</u> at 83-

8

170).[6]  These call logs detail Plaintiff's allegations regarding cyberstalking and harassing by, among others, GTCC, Samuel Terry, and Day'Quan.  (See, e.g., id. at 106 (reflecting that Plaintiff "continues to get banned from restaurants and thinks [someone] from GTCC High Point is the cause[] of it," as well as that someone "from GTCC has been filming her everywhere she goes and posting it on Internet"), 116 (Plaintiff "spoke of two way audio/visual system being used on her from a fight over men with other women from church" and indicated that this harassment "has been an ongoing issue for 10 years and [she] would like to speak to an office[r] as now she has more evidence because a 2-way audio/visual communication system is being used"), 121 ("[Plaintiff] requested that we forward the information to FBI and CIA and advised us about all the strange coincidences of navy blue Nissan Maximas that she sees that are somehow connected to Sam Terry and his stepson . . . ."), 137 (discussing MRI and wrong discharge paper allegations and indicating that Plaintiff "feels she is being extremely cyberstalked"), 157 (indicating that Plaintiff wants officer to walk through "her apartment to check if they can 'detect any cameras' that the HR Department and a DeQuan Subj[ect] from GTCC may have put there" and "also wants to show [officers] the DeQuan Subj[ect]'s student ID from GTCC in regards to a former

---

6 For legibility reasons, this Opinion utilizes standardized spelling and capitalization in all quotations from these records.

harassment she took out on the Subj[ect] through GTCC" and "also mention[ed] poss[ibly] having cyberware on her body from someone brushing up against her?"), 164 ("[Plaintiff] feels Mr. Terry is sending messages to her and 'cyberstalking' her by having people that resemble old coworkers/family show up to areas she is in.").) In addition to providing thorough summaries of Plaintiff's core allegations (see, e.g., id. at 149, 164), the call logs elaborate upon Plaintiff's cyberstalking claims, including that Plaintiff made repeated allegations to police "of people installing cameras and listening devices in her apartment and assaulting her remotely, possibly by a chip that they secretly installed into her body" (id. at 120); that she reported seeing "the weather man on the TV saying things that she has reported to the FBI," which she deemed evidence of cyberstalking by Samuel Terry (id. at 130; see also id. at 133 (indicating that Plaintiff reported "the weather man on tv saying things that only she knows and wrote down")); and that she "[was] rambling about how she died magically from chicken pox and someone using cyberware to get information" (id. at 158).

Plaintiff also filed a supplement, requesting "to enter documents in reference to [her] present state of being." (Docket Entry 4 at 1.) The supplement discusses certain health challenges that Plaintiff has experienced (see id. at 1-2) and then states, "please see my current bank statement, and Samuel Terry, the guy I filed harassment at [GTCC,] and others helping him now, took money

10

out of my account and I know this because when I take the balance of $79.95 and add back in my debits, by the time I go back up and add in all the way up to $38.00, my balance on the calculator is not the same as what is on the statement" (id. at 2-3).

As the foregoing recitation makes clear, Plaintiff's claims qualify as "fanciful, fantastic, and delusional," Denton, 504 U.S. at 33 (citations and internal quotation marks omitted). Even liberally construed, Plaintiff seeks damages for "clearly fictitious factual claims," Stratton, 521 F. App'x at 289, best described as "bizarre and delusional," O'Brien v. United States Dep't of Just., 927 F. Supp. 382, 385 (D. Ariz. 1995), and "ris[ing] to the level of the irrational [and] the wholly incredible," Denton, 504 U.S. at 33. The Court should therefore dismiss Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).[7]

## CONCLUSION

This action fails as frivolous.

---

[7] Plaintiff submitted certain bank and medical records in connection with her supplement, which the Clerk placed under temporary seal given their sensitivity. (See Docket Entry 5.) In light of the recommendation to dismiss Plaintiff's Complaint, and the irrelevance of these documents to that determination, the Court will strike these documents from the docket. See M.D.N.C. LR 5.4(a)(3) ("Sealed documents should not be filed unless necessary for determination of the matter before the Court."); M.D.N.C. LR 83.4(a)(3) (specifying that Court may strike materials if party fails to comply with Local Rules).

**IT IS THEREFORE ORDERED** that the Application (Docket Entry 1) is **GRANTED** for the sole purpose of entering this Order and Recommendation.

**IT IS FURTHER ORDERED** that the materials filed at Docket Entry 5 shall be **STRICKEN** from the docket.

**IT IS RECOMMENDED** that this action be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as frivolous.

This 7th day of January, 2022.

>                    /s/ L. Patrick Auld
>              **L. Patrick Auld**
>        **United States Magistrate Judge**